.If the plaintiff in error does not appear, the defendant may either have the plaintiff called, and
dismiss the writ of error, with costs, or he may open the record, and go for an affirmance.

MARSHALL, Ch. J., stated the practice of the court to be, that where
.there is no appearance for the plaintiff in error, the defendant may have the
·plaintiff called, and dismiss the writ of error ; or may open the record, and
·pray for an affirmance.

*P. B. Key,* for the defendant, had the plaintiff called.

Dismissed.

The Chief Justice also stated, in answer to a question from the clerk,
.that, in such cases, costs go, of course.

---

## SARAH and ABIGAIL SILSBY *v.* THOMAS YOUNG and ENOCH SILSBY.

### *Construction of will.—Abatement of legacy.*

D devised all his estate to his executor, in trust to convert the same into money, and after pay-
ment of debts, to invest the surplus in the funds, or put it out on interest. He then bequeathed
1500*l.* to E., to be paid at the age of 21, subject to the subsequent provisos; and directed
1000*l.* to be set apart, and the interest to be paid to S., during her life, and after bequeathing
·other pecuniary legacies, said, provided " that in case the personal estate, and the produce aris-
ing from the real estate, which I shall die seised and possessed of, shall not be sufficient to an
.swer the said annuities and legacies herein before by me bequeathed, then and in such case,
I direct, that the said annuities and legacies so by me bequeathed, shall not abate in proportion;
.but the whole of such deficiency (if any there shall be) shall be deducted out of the 1500*l.* be-
queathed to E.," whom he also made his residuary legatee. The estate was more than sufficient
.at the time of the testator's death, to pay all debts, annuities and legacies, but afterwards, by
the bankruptcy of the executor, became insufficient: *Held,* that E.'s legacy of 1500*l.* should be
:liable to S.'s annuity.[1]

THIS was a writ of error to the Circuit Court of the United States for
the district of Georgia, to reverse the decree of that court, which dismissed
the bill of the complainants, Sarah and Abigail Silsby.

Daniel Silsby, the brother of the complainants, and uncle of the defend-
ant, Enoch Silsby, being seised and possessed *of real and personal [*250
estate in England and in the state of Georgia, by his will, made in
England, on the 11th of January 1791, devised all his estate to his executor,
W. Gouthit, of London, in trust, to turn the same into money, or securities
for money, and after payment of his debts, to place out the surplus upon
.any public or private securities, upon interest, or to invest it in the public
funds.

He then bequeathed to his nephew, Enoch Silsby, 1500*l.* sterling, to be
paid to him at twenty-one years of age, " subject to the provisos hereinafter
mentioned," and directed the interest to be paid to his guardian, during his
minority, to be applied to his maintenance and education.    He then directed
his trustees to set apart 1000*l.* sterling, and pay the interest thereof to his
sister Sarah, during her life, for her sole and separate use and disposal, and
in case of her death, without issue, the principal was to be paid over to

---

[1] See Murdock's Appeal, 31 Penn. St. 47.

Silsby v. Young.

Enoch. A similar provision was made for his sister Abigail, the other complainant. And after bequeathing several other pecuniary legacies, he used the following words : " Provided always, and I do hereby expressly declare it to be my will and meaning, that in case the personal estate, and the produce arising from the real estate, which I shall die seised and possessed of,. shall not be sufficient to answer the said annuities and legacies herein before by me bequeathed, then and in such case, I direct that the said annuities and legacies, so by me given and bequeathed, shall not abate in proportion ; but that the whole of such deficiency (if any there shall be) shall be deducted out of the said sum of 1500l. herein before by me bequeathed to my said nephew, Enoch Silsby. And in case the personal estate, and the produce arising from the sale of the real estate, which I shall die seised and possessed of, shall be more than sufficient to answer and satisfy the several annuities or legacies herein before by me bequeathed, then and in such case, I give and bequeath the surplus and residue which shall so exceed the purposes of this. my will, unto my nephew, Enoch Silsby, subject to such conditions as are herein before, in this my will, mentioned and contained, touching and concerning the said sum of 1500l. sterling, so by me bequeathed as is herein before particularly mentioned."

*251]      *The testator died at Ostend, on his way to the United States, in February 1791, leaving real and personal estate more than sufficient. to pay all the debts and legacies, and which came to the hands of Gouthit,. the executor, who paid all the debts and all the legacies, excepting those bequeathed to the complainants, and to the defendant, Enoch Silsby, and another legacy of 500l. to Daniel Silsby Curtain ; but upon these, he regularly paid the interest, until the year 1796, when he became bankrupt.

The testator, in his will, mentioned, that he had in the hands of Harrison,. Ansty & Co., of London, 5000l. sterling, for which they allowed him an interest of five per cent. per annum.

Gouthit, in his letter to the complainants, of September 9th, 1791, said,. " I have an excellent offer ; a mortgage for 2000l. which, if you think well, I will take it ; for if I should, at any time, see well to place it anywhere else, by giving six months' notice, it would be paid. It is on an estate in Manchester, one of the greatest trading towns in this kingdom, and I can make you five per cent. sterling on it, which will, you know, be 50l. a. year for each of you, and you may have it paid as you please, but every six months, I think, would be best. The gentleman I mean to lend the money to, is an old acquaintance of your brother's, and the estate is worth 5000l. He does but want 2000l., so, you know, nothing can be safer on earth, and I will have the deed so recited as to set forth the money is for your use, &c. This,. I doubt not, but will meet your approbation. I have taken no money out of Harrison's hands, nor even interest, as I have no doubts of its safety, and the interest is going on."

In answer to which, the complainants wrote him, on the 1st of February 1792, " Yours of September the 7th, you mention an old friend of our dear brother's wanting to hire the 2000l. on mortgage. We would willingly oblige him, but cannot. We choose to let it remain, just as our brother left, it, and shall draw on you every six months for our interest."

*252]      *Gouthit, before his bankruptcy, drew all the money out of the hands of Harrison, Ansty & Co., who were, and always had been,.

solvent and in good credit. He never placed out in any specific funds the 2000*l.* from which the complainants' annuities were to arise.

On the 20th December 1791, Gouthit sent a power of attorney to the defendant, Thomas Young, of Savannah, in Georgia, to collect the effects of the testator in that state, under which power, Young obtained letters of administration with the will annexed, and took into his possession all the property there, some part of which he paid over to Gouthit. He also in the year 1800, paid the legacy due to Daniel Silsby Curtain, and part of the 1500*l.* legacy to Enoch Silsby. Considerable debts due to the estate were still outstanding in Georgia.

At the time of Gouthit's bankruptcy, he was indebted to the estate of his testator in the sum of 5380*l.* 12*s.* 2*d.* sterling, but the commissioners refused to admit him, as executor of the testator, to prove the same as a creditor of his own estate, whereupon, the legatees, who had not been paid, petitioned the Lord Chancellor of England, that Gouthit might be so admitted to prove the debt for their benefit, which his Lordship decreed accordingly ; and a dividend of 403*l.* 10*s.* 10*d.* sterling was received by the accountant-general of the court of chancery, but no part of that sum had been received by the complainants.

Enoch Silsby filed a bill in equity, in the circuit court of the United States for the district of Georgia, against Young, to compel him to account and pay over to him, as residuary legatee, all the estate remaining in the hands of Young.

The complainants, Sarah and Abigail, filed the present bill in equity, in the same court, against both Thomas Young and Enoch Silsby, praying that Enoch's legacy of 1500*l.* might abate in favor of their legacies, and that they might charge the residue of the estate for the balance, and have their 2000*l.* placed out on good security, according to the will, and that they might be paid the arrearages of their annuities out of the 1500*l.* legacy, *and [*253 out of the residue of the estate which came to the hands of Young.

The judge below (Judge STEPHENS) dismissed the present bill, and decreed that Young should account to Enoch Silsby, upon the other bill in which Enoch Silsby was complainant, and Thomas Young, defendant.

*Morsell,* for the plaintiffs in error.—1st. If the plaintiffs have not discharged the general funds, they are entitled to the relief they pray for. 2d. They have not discharged those funds, nor relinquished their claim upon the whole estate of the testator.

It is true, that if one legatee, by diligence, has got his legacy, he shall not be obliged to refund, in case of a subsequent waste of effects by the executor ; but that is only where all the legacies are payable at one time, and the legatees are in a capacity to compel the payment of their legacies. In the present case, the principal of the legacies to the complainants was not to be paid to them. The testator had directed his executor to set apart 2000*l.* sterling, and to pay the interest only to the complainants, during their lives. It was, therefore, a bequest of an annuity merely. There was nothing for the complainants to do. They had no right to designate the funds which should be set apart by the executor, in whom alone was vested the right and the power to make the appropriation. By the words of the will, if the estate should not be sufficient to pay all the legacies, yet the complainants were

Silsby v. Young.

not to suffer. But the defendant, Young, having paid some of the legacies in full, has thereby admitted assets for all. The complainants having regularly received their annuities to the year 1796, when Gouthit, the executor, became bankrupt, had no right to complain, and had no reason to press for a specific appropriation of the money, from which their annuities were to be paid. They knew that the whole estate stood chargeable to them, *254] *until their 2000*l.* were set apart, according to the directions of the will. The residuary legatee cannot avail himself of a breach of trust by the executor, to the injury of the complainants, who claim under the same trust. The executor was not bound, by the will, to give any security, nor could the complainants call upon him therefor.

The time at which the estate should be insufficient to pay all the legacies, so as to enable the complainants to call upon the residuary legatee, is not designated by the will, in express terms ; but it is clear, that the time of the death of the testator was not the time he contemplated ; because, after directing his executor to sell his real estate, he says, " in case the personal estate, and the produce arising from the real estate, which I shall die seised and possessed of, shall not be sufficient," &c.; thereby contemplating a period after his death, and sufficiently distant, to enable his executor to sell the real estate. The words of the will are, " sufficient to answer the said annuities." How long ? The answer is obvious ; so long as the annuities are to be paid, which was during the lives of the complainants. The residuary legatee was, therefore, to answer for the insufficiency, if it happened at any time during their lives.

The case of *Marsh* v. *Evans*, 1 P. Wms. 668, is very similar to the present. The testator gave to each of his two sons, and to his daughter, 2000*l.* a piece, " with a proviso, that if his assets shall fall short for the payment of these legacies, still, the daughter shall be paid her full legacy, and that the abatement shall be borne proportionably out of the sons' legacies only." " The testator left sufficient to pay all the legacies, but the executrix wasted the assets, and by that means only a deficiency happened." The Master of the Rolls decreed, that the daughter should abate equally with the sons. But the Lord Chancellor reversed the decree, and directed, that the daughter should have her full legacy, and that the abatement should be out of those of the sons only.

*255] *It is unimportant to the complainants, by what means the assets became insufficient, inasmuch as the testator intended to secure their annuities, at all events. It was the testator, and not the complainants, who trusted the executor. The legacy of 1500*l.* to Enoch is (so far as the complainants are concerned) to be considered as a residuary legacy ; because, by the express words of the will, it is placed upon the same ground ; and nothing can be taken by the residuary legatee, until all the debts and particular legacies are paid. *Spendlove* v. *Aldrich*, 2 Ld. Raym. 1320.

The case of *Orr* v. *Kaines*, 2 Ves. 193, shows, that it is an established rule, that if an executor pays one legatee in full, he thereby admits assets to pay all the others.

2d. The complainants have not, by any act, waived their right to come upon the whole estate, nor forfeited their right by any *laches*. The letter of February 1792, is a mere refusal to sanction anything not required or directed by the will. The complainants say, that they choose to let it (*i. e.*

Silsby v. Young.

the 2000l. provided by their testator as a fund for the payment of their annuities) remain just as the testator left it. It is not even a hint, that they meant to rely on the money in the hands of Harrison, Ansty & Co., and if it was, yet they had no power to prevent the executor from drawing those funds out of the hands of that house ; nor did it have that effect, for Gouthit did actually withdraw them, and apply them to other purposes.

The complainants were not bound to call upon the executor to designate the funds set apart for the payment of their annuities ; and so long as they were regularly paid, they had no cause to suspect the solvency and the honesty of Gouthit, on whom their testator had chosen to bestow his confidence. They cannot, therefore, be charged with *laches.*

*Harper,* for the defendant, Enoch Silsby, contended, 1st. That [*256 as the estate was sufficient at the time of the testator's death, and became insufficient long afterwards, by the default of the executor, the contingency had not happened upon which the will renders Enoch Silsby's legacy of 1500l. liable solely to abatement ; and that he was, therefore, entitled to receive the whole ; or, at most, was liable only to an abatement, *pro rata,* with the other legatees. 2d. That the complainants, by their acts, made their election to depend on the estate in England, and on the security of Gouthit, and therefore, could not resort to the residue in this country. 3d. That if their acts did not amount to such an election as would preclude them from resorting to the residue, yet their *laches,* in omitting to take steps for compelling the executor to place out their legacies on public or private securities, according to the will, ought to have that effect.

The complainants were of full age, at the time of making the will. The defendant, Enoch Silsby, was an infant, for a long time after the testator's death. There is a limitation over to Enoch of the principal sum of the complainants' legacies. By their conduct, he has lost the reversion of the 2000l. and of 1200l., the surplus. It is not just, that the loss should fall upon him who was then an infant. The claim of the complainants would sweep everything from Enoch, who was the peculiar object of the testator's bounty. The defendant, Young, must take the consequences of his own act, if he has paid any of the legatees in full. He is solvent, and having, by his act, admitted assets, the complainants cannot resort to the residuary legatee.

But the testator died possessed of estate enough to pay all the debts and legacies; and therefore, Enoch's legacy of 1500l. by the terms of the will, is not bound to abate. *If the testator meant to give the complainants [*257 their legacies, at all events, he would have said so. He knew that he had enough to pay all, at the time of making his will, but accidents might happen before his death, and it was to guard against those only, that he provided for the case of insufficiency.

There is a great difference between this case and that of *Marsh* v. *Evans,* cited from 1 P. Wms. 668. In that case, the proviso was, that "if his assets should fall short." The word assets is technical, and refers to the estate after his death. The legacies were not payable, until his children should be of full age, and the whole expression evidently alludes to a state of things, which might happen at any time between his death and the time when the legacies would become not payable. But in the present case, the testa-

153

tor meant to refer to the time of his death ; if there should then be an insufficiency to pay all, Enoch's 1500*l.* should abate, but not otherwise.

The anonymous case in 1 P. Wms. 495, establishes the rule, that if one legatee, by diligence, obtains his legacy, and the executor, having had sufficient assets, wastes them and occasions a deficiency, the legatee shall not be obliged to refund. In the case of *Walcot* v. *Hall*, 23d February 1788, Supplement to Viner, vol. 3, p. 432, the distinction is taken between a deficiency at the time of the death, and that which arises afterwards. The case of *Orr* v. *Kaines*, 2 Ves. 194, shows that where there was an original sufficiency of assets, and the executor remains solvent, the legatees shall not refund. As Young is solvent, the complainants cannot oblige the other legatees to refund, unless there was an original deficiency of assets.

*258]        *2d. As to the acts of the complainants. Their letter to Gouthit prevented the 2000*l.* from being put out on security. It is, therefore, the same thing, in effect, as if the executor had, at their request, put it out on a security which had failed. But they have actually made choice of the security. They knew the money was in the hands of Harrison, Ansty & Co., and in their letter, they say, " we choose to let it remain, just as our brother left it ;" that is, in the hands of Harrison, Ansty & Co. After having done that, Gouthit remained their agent for the purpose of drawing and remitting the interest. They were the only legatees who were of age, and capable of assenting to such a disposition of their legacies : the other legatees were infants. If the complainants had directed the 2000*l.* to remain in the hands of the executor, and he had failed, they must have sustained the loss. By refusing his offer to place it out on mortgage, they have, in effect, assented to his retaining it, and he having failed, they must submit to the consequence. If they had assented to his offer, the money would have been safe, and the defendant, Enoch, would not have lost his chance of the reversion. If the executor himself had placed it out on security, and set it apart, according to the directions of the will, and it had been lost, they could never have called upon the residuary legatee.

3d. But the complainants have been guilty of *laches*, in not compelling the executor to place out the money on security. They had early notice of the will, and took no measures to have their legacies secured, until the failure of Gouthit, which was six years after the testator's death. By this neglect, Enoch has lost his reversion : he was a minor, and therefore, no *laches* can be imputed to him.

*259]        *P. B. Key*, for the defendants.—1st. As to Young. *He considers himself as a stakeholder only. If the complainants are entitled to be first paid, he holds for them ; if not, then he holds for the defendant, Enoch. If there is an original deficiency of assets, and one legatee receives the whole of his legacy, the others may compel him to refund, and the executor will not be obliged to pay the other legatees in full. So, if an executor pay one in full, by mistake, it shall not preclude him from alleging a defect of assets. There is no case in which an executor has been thus precluded, by a payment in full to one of the legatees. The case from 2 Ves. 194, was, where the executor had not only paid one in full, but had neglected to make an inventory.

2d. As to the defendant, Enoch Silsby. The general principle is admitted, that specific pecuniary legatees are to be first paid ; and that, if there is

not sufficient to pay the whole, they must abate in proportion. This will appears to have been drawn by able counsel. If the testator meant that the particular legacies should have been paid out of the whole estate, he would have said so; but he has directed a particular fund to be set apart, out of which the annuities of the complainants were to be paid. If this fund had been set apart, as directed by the will, the defendant, Enoch, would have been entitled to the residue, and exonerated from all liability to refund. The complainants were the only legatees of competent age to compel the executor thus to set apart the fund; or, at least, they were the only legatees to whom *laches* can be imputed. They not only neglected to do this, but by their letter prevented the executor from doing it.

The *residuum* was to abate, upon the same contingency only upon which the legacy of 1500*l.* was to abate; and that contingency never happened. "The personal estate, and the produce arising from the real estate, of which the testator died seised and possessed," *was "sufficient to answer all the debts, annuities and legacies." If the time of the testator's death [*260 was not the time when the sufficiency of the estate was to be ascertained, yet, if at any time afterwards, the personal estate, and the produce of the real estate, which came to the hands of the executor, was sufficient, the right of the complainants to come upon Enoch's legacy of 1500*l.* and upon the *residuum*, ceased. It was then incumbent upon the complainants, to look to their own legacies, and get them properly secured; if they did not, they gave personal credit to the executor, and if he wasted the estate, and became insolvent, they must suffer the loss. They had a right to require security in chancery. It is a part of the regular chancery jurisdiction, to compel such security, and no suggestion of a *devastavit* was necessary. The funds in England were more than sufficient to pay all the debts and legacies; it was not necessary to wait for the settlement of the estate in Georgia. Young, the administrator in Georgia, never had a sufficiency of assets; and therefore, his payment of one legacy in full, if that is the fact, cannot bind him to pay all the rest.

*Martin*, in reply.—The question is, whether, if upon an account against the defendants, any funds shall be found in their hands, we are entitled to recover?

They contend, that we are not entitled to an account. The will speaks of the produce of the estate, and not of the estate itself; contemplating the intermediate acts of the executor; looking forward to subsequent events, and negativing the idea that the testator was contemplating only the situation of his estate, at the time of his death. He directs all his estate to be turned into cash, and his debts to be collected, and the whole invested in funds.

The principle of abatement was not to take place, until the legacies were to be paid. *The complainants were not bound to elect any particular fund. They had a right to look to the whole estate. The word [*261 "it," in their letter to the executor, evidently refers to their legacy of 2000*l.* and not to any particular sum in the hands of Harrison, Ansty & Co. That letter did not influence the conduct of the executor, for he did not leave the money in the hands of those merchants. If he had done so, and they had failed, there might have been some plausibility in the argument.

The complainants were not bound to apply to chancery to compel the

Silsby v. Young

executor to give security. Until the year 1796, they had no reason to complain, and no cause for suspicion. The testator had placed confidence in the executor, and had left it entirely to his discretion when, and in what manner, he should place the money out on security; consequently, there were no *laches* on the part of the complainants.


February 13th, 1806. MARSHALL, Ch. J., delivered the opinion of the court.—This being a suit in chancery, brought by legatees, claiming an account, in order to the payment of their legacies, and their bill having been dismissed, without an account, the decree can only be supported, by showing that there are, in the hands of the administrator, no assets which ought to be applied to the purposes prayed in the bill.

The testator having bequeathed to each of his two sisters, Sarah and Abigail, who are the complainants, the interest on 1000*l*. sterling, and that being in arrears, and assets having come to the hands of his representative, the complainants are certainly entitled to an account, unless they have forfeited all pretensions to their legacies. *The defendants say they have forfeited their rights, 1st. By a letter, selecting a particular debt in satisfaction of their legacy, which debt is lost. 2d. By their *laches*.

*262]

The better to understand the correspondence which is relied upon, it must be recollected, that by the will, the whole estate, real and personal, of the testator, was devised to executors and trustees, who were directed to place it out on public or private security, in such manner as should, in their judgment, best promote the interests of the legatees. The testator then directs, among other bequests, that his trustees shall set apart 1000*l*. sterling for each of his sisters, the interest of which shall be paid to them, during their natural lives, after which the principal is to be divided between the children of each, if they should marry and have children, but is given to his nephew, Enoch Silsby, in the event of the first legatees dying unmarried, or without children.

This duty of the executor and trustee being thus plainly marked, he addressed a letter to the legatees, in September 1791, in which he mentions an offer which had been made him, of a mortgage of 2000*l*., the amount of the sums to be set apart for them, which he will take, if it meets their approbation. If the plaintiffs had taken this mortgage, and the title had proved defective, or the mortgaged property had been destroyed, they would, most probably, have forfeited all claims upon the estate of their testator, and would have been, at least, censured by the legatee in remainder, for having destroyed, by an improvident intervention in the management of the estate, his right to the principal sum, on their dying unmarried. Such an interference, on their part, was unnecessary, because the executor was authorized, by the will, to place the estate, either on private or public security, as he should think most advantageous, and would have been particularly indiscreet, because they could neither judge of the validity of the title, nor of the value of the premises proposed to be mortgaged. To have intermeddled with the subject would, therefore, have been in them a departure from propriety and common prudence, not to be accounted for, nor justified.

*263]

Under these circumstances, they say, "You mention an old friend of our dear brother's wishing to hire the 2000*l*. on mortgage. We would willingly

oblige him, but cannot. We choose to let it remain, just as our brother left. it." To the court, it seems, that this letter will admit of but one construction. It is a plain declaration, that they do not mean to intermeddle with. the duties of the executor, but to leave him to perform them according to the directions of his testator. "We choose to let it" (the legacy of 2000*l.*). "remain just as our brother left it," is plainly saying, that the legacy must. remain on the foundation on which the will placed it. The construction; which would convert these words into a declaration, that they chose the debts of their testator not to be collected, and that they chose to take upon. themselves the hazard of the solvency of any particular debtor, whose debt should remain outstanding, or of the executor, if he should happen to collect. it, is really too violent a distortion of them, to be tolerated for an instant.

As little foundation is there, for the allegation, that the rights of the complainants have been forfeited by their *laches.* The court can perceive no; *laches* on their part. It was not particularly incumbent on them, to incur the expense of inquiring into the manner in which the executor performed his. trust, with respect to the estate at large. They received their interest regularly, and there was no circumstance to awaken a suspicion that they were in. danger. On the residuary legatee, and on his father and natural guardian,. it was more particularly incumbent, to examine into the conduct of the executor, and though he may be perfectly excusable for not having done so, he cannot throw the loss on others, whose conduct has been perfectly faultless.. *The court is, therefore, clearly and unanimously of opinion, that the complainants have not forfeited their rights; and consequently, that [*264 the decree must be reversed, and an account directed.

In considering the principles on which the account is to be taken, the court think it perfectly clear, that the specific pecuniary legacies must be set apart, before the defendant, Enoch Silsby, can be entitled to the *residuum.*. The words annexed to the bequest of the residuary estate, which subject it to the same conditions with the bequest of the 1500*l.* are understood by the court, to relate to the condition of payment, at the age of twenty-one, and to the limitations over, in case of the death of the residuary legatee, not to, the question of abatement; and a *residuum, ex vi termini,* is that which remains after particular legacies are satisfied.

The court is also of opinion, that if there be not sufficient assets to satisfy all the specific legacies, the loss must fall exclusively on the 1500*l.* given to, Enoch Silsby, until that fund be exhausted.

It has been argued, that the words of the will limit this charge on that legacy to the contingency of an insufficiency of assets, at the death of the testator. The words are, "It is my will and desire, that if the personal. estate, and the produce arising from the real estate, of which I shall die seised and possessed, shall not be sufficient to answer the several annuities. and legacies herein before by me bequeathed, then and in such case, I direct,. that the annuities and legacies shall not abate in proportion, but that the whole of such deficiency, if any there be, shall be deducted out of the said. sum of 1500*l.* herein before by me bequeathed to my said nephew, Enoch Silsby."

These words have undergone a very critical examination, and it has been. contended, that the time at which the sufficiency mentioned in the will is to be determined, is fixed by the testator, at his death, in like manner as if the

expression had been, "if my estate shall not, at the time of my death, be in-sufficient," &c. But the words do not appear to the court to demand such *265] an interpretation. The words, "the personal and real estate of *which I shall die seised and possessed," are no more, in substance, than the words "all my real and personal estate" would have been. They describe the subject, on the insufficiency of which an abatement of a particular legacy is to take place, but not the time when that insufficiency is to be tested. In the opinion of the court, that time is, when the will is carried into execution, by the application of the funds to their object. If, when that application is made, a deficiency appears, "then and in that case" it is, that the abatement is to take place in the specific legacy to Enoch Silsby.

This specific pecuniary legacy being given to the same person to whom the *residuum* is given, and on the same terms, assumes completely the character of a residuary bequest, and the testator does not appear to have intended to give it any preference over the *residuum*. He seems to have intended certain provisions to his relations, the extent of which were apportioned to his opinion of their necessities, and which he did not leave in a situation to be enlarged or diminished by any incident which might affect the state of his affairs. Should his property be merely sufficient to pay those annuities and legacies, they were to sustain no deduction ; should it be ever so much enlarged, they were to receive no increase ; but all he might possess, exceeding those specific donations, was to be given to his nephew. His bounty to his other legatees was measured ; that to his nephew, was not defined. As in every case where specific legacies are first given, so in this, it is the intent of the testator to prefer the specific legatees. There would have been no motive for giving a specific legacy, subject exclusively to abatement in case of deficiency, to the residuary legatee, but for the purpose of providing a fund for his education and maintenance during his infancy. For every other purpose, this particular legacy to Enoch Silsby is to be considered as a part of the *residuum*.

It is not easy to assign a motive in the testator for intending a preference to his specific, over his residuary legatee, in the event of an insufficiency of assets, at his death, which would not equally apply to an insufficiency which would take place afterwards. The only motive for this preference *266] which could possibly have existed, *was his wish, that if the fund should not be adequate to pay all his legacies, yet, no deduction should be made from those which were particularly bequeathed. This wish originated in his particular feelings towards his relations, and could not depend on the insufficiency which he provided against taking place, at the time of his death, or a few months or years afterwards. If, at the time of his death, his estate had been sufficient, but before it could be collected and applied, according to his will, bankruptcies, or any other casualties, had occasioned a deficiency, no reason can be perceived by the court for supposing that the contemplation of such a deficiency would have induced him to make a different arrangement of his affairs, from what he would have made had he contemplated a deficiency at his death. And between such a deficiency, and one occasioned by the fault or misfortune of an executor, chosen, not by his legatees, but by himself, the court can perceive no distinction.

It is, therefore, the opinion of the court, that the decree of the circuit

court be reversed, and that the cause be remanded to the circuit court, that an account may be taken, in order to a final decree.

Reversed.

DECREE.—This cause came on to be heard, on the bill, answers, exhibits and other testimony in the cause, and was argued by counsel; on consideration whereof, the court is of opinion, that there is error in the decree of the circuit court, in directing the bill of the complainants to be dismissed, and that the same ought to be reversed and annulled. And this court doth farther direct and order, that the said cause be remanded to the circuit court, that accounts may be taken of the assets which are in the hands of the defendant, Thomas Young, of the payments which have been made to Enoch Silsby, and of the sums which are due to the complainants, and of such other matters as may be necessary to a final decree.